THOMPSON *v.* WHITE WATER VALLEY RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 26.  Argued October 21, 1889.— Decided November 4, 1889.

A mortgage by a railroad company, which covers its entire property and also all property appertaining to its road which it might afterwards acquire, is valid as to such after-acquired property; and the bonds issued under it are a prior encumbrance on a part of the chartered line constructed, after the funds realized from the mortgage bonds had been exhausted, out of moneys subsequently furnished by parties who took from the company a special lien upon the rents and profits of the section so constructed with their money.

Statement of the Case.

The doctrine that a vendor not taking security for the price of real estate
   sold by him holds in equity a lien upon the property for such price has
   no application to this case.

THIS suit was brought by holders of obligations of the
Indiana, Cincinnati and Lafayette Railroad Company, and on
behalf of other holders similarly situated, to enforce an alleged
lien claimed by them upon earnings of a section of the road
of the White Water Valley Railroad Company, against the
claim to priority of bondholders secured by an earlier mort-
gage.  The White Water Valley Railroad Company was
organized as a corporation in 1865, under the laws of Indiana,
with authority to locate, construct and operate a line of rail-
way from Hagerstown, in Wayne County of that State, to the
town of Harrison, Dearborn County, on the boundary line
between Indiana and Ohio.  To raise the necessary means to
construct the railway, the company issued its coupon bonds
to the amount of one million of dollars, in sums of one thou-
sand dollars each.  They were dated August 1, 1865, and were
to mature the 1st of August, 1890, and draw interest at the
rate of eight per cent per annum, payable semi-annually.  To
secure the payment of the principal and interest of these bonds,
the company executed to trustees by way of mortgage, a deed
bearing date on that day, of its railroad and all the right of
way and land occupied thereby, with the superstructure and
all property, materials, rights and privileges, then or there-
after appertaining to the road; and the benefit of all contracts
with other railroad companies, then existing or thereafter to
be made, and all property, rights and interests under the same.
The deed contained the usual covenants to execute suitable
conveyances for the further assurance of property subsequently
acquired and intended to be included in the instrument.  The
company soon afterwards commenced the construction of the
road, and by the 4th of November, 1867, completed that part
of it which lies between the towns of Harrison and Cambridge
City, leaving the distance from the latter place to Hagerstown.
— between seven and eight miles — unconstructed.  It was
then without the requisite means to equip the part of the road
completed, or to undertake the construction of the remaining

portion of the road. In this condition it entered into a contract of perpetual lease with the Indianapolis, Cincinnati and Lafayette Railroad Company, a corporation then in existence, in consideration of which the latter company agreed to furnish all the necessary equipments, material and laborers to operate the line of the road then completed, and to construct and put in good and safe-running order for the accommodation of the public that part of the line then uncompleted, that is, the section between Cambridge City and Hagerstown, and to pay to the lessor annually the sum of one hundred and forty thousand dollars in four quarterly payments of thirty-five thousand dollars each. The contract referred to the mortgage of one million of dollars before mentioned, and provided for the payment of the interest thereon out of the rents received, and for the resumption of possession by the lessor if the lessee failed to keep its covenants.

The Cincinnati, Indianapolis and Lafayette Company went into the possession of the property thus leased, and proceeded to have the remaining portion of the line of the road between Cambridge City and Hagerstown constructed. For that purpose the lessee, on the 7th of December, 1867, entered into a contract with Benjamin E. Smith and Henry C. Lord, by which these gentlemen agreed to construct the remaining portion of the line, and the lessee agreed, in consideration of such construction, to issue to them, or to such parties as they might name, obligations of the company to the amount of two hundred and five thousand dollars, divided into shares of one hundred dollars each, which obligations were to be transferable on the books of the company like shares of stock, and the principal thereof was to be irredeemable, but to bear interest at the rate of eight per cent per annum, payable semi-annually. The contract with these parties recited the right of the lessee company to the perpetual use and possession of the railroad from Harrison to Hagerstown, and the right to construct the uncompleted portion of the road, and have the benefit of all donations made for that purpose, and provided that in payment for the construction of the uncompleted portion the lessee was to issue its obligations to the amount of two hundred

and five thousand dollars, as before mentioned.   Under this contract the line of railway between Cambridge City and Hagerstown was completed, and the lessee company remained in its possession from July, 1868, to May 1, 1871, receiving the income thereof, and gave its certificates for the obligations mentioned to Lord and Smith to the amount of two hundred and five thousand dollars.   Whilst the work upon this section of the road was in progress it was agreed between the contractors and the lessee company that the holders of the certificates for the obligations should have a perpetual lien upon all the earnings of the line constructed by them, to secure the payment of the semi-annual interest, as stipulated, and on the 23d of April, 1868, such lien was given by resolution of the board of directors of the lessee company.   On the 10th of July, 1869, the lessor company and the lessee company united in executing and delivering a mortgage to Smith and Lord upon the section of railroad built by them, in trust to secure the holders of the certificates mentioned.  On the 12th of July, 1869, the board of directors of the White Water Valley Railroad Company, by a resolution entered on its records, ratified the contract of lease, and directed its president to execute, or join in the execution of, any writing necessary or proper to give effect to the agreement for the lien on the earnings mentioned.   On the first of May, 1871, the two corporations, the lessor and the lessee companies, agreed that the original contract of lease should be cancelled, and that the road of the White Water Valley Railroad Company should be returned to it.   In pursuance of such agreement the lease was cancelled, and thereafter the White Water Valley Railroad Company operated the property, receiving its revenue and earnings, amounting, as charged in the bill, to the sum of one hundred thousand dollars.   It was agreed between these two companies that in part consideration for the surrender of the road from Hagerstown to Cambridge City the White Water Valley Railroad Company should recognize the priority of the lien of all the holders of the certificates, and should either pay or discharge the interest thereon continuously thereafter, or make other satisfactory arrangements with such holders; or, failing

therein, should surrender to the lessee company the possession of the railroad between those places and cease to operate the same or to receive its earnings.

The bill charged that the White Water Valley Railroad Company had taken and maintained possession of the section of the railroad mentioned since the first day of May, 1871, up to the commencement of the suit, and been in the receipt of all its earnings, and had disregarded its obligations to the holders of the certificates. The bill therefore prayed that an account be taken of the income and earnings of the said branch, and that out of the same the amount due the complainants on their certificates be directed to be paid, and that in default of payment the lien be foreclosed and the property sold.

Answers were filed to this bill and replications to them, and proofs were taken.

Pending the progress of the case the White Water Railroad Company, a corporation under the laws of Indiana — a different corporation from the White Water *Valley* Railroad Company — was permitted to intervene in the case. It seems that after the commencement of this suit the trustees in the mortgage of August 1st, 1865, brought suit for the foreclosure of the mortgage executed to them and obtained a decree for the sale of the entire road mortgaged, which included the whole of the road from Harrison, in Dearborn County, to Hagerstown, in the county of Wayne, embracing that portion extending between Cambridge City and the town of Hagerstown, and under such decree said property was sold and the White Water Railroad Company became its purchaser. In its answer to the bill of complaint, that company set up the proceedings had in the foreclosure suit, the decree for the sale of the property mortgaged, and its purchase of the same. The court below decreed in its favor, holding that the whole of that railroad, including the portion lying and extending between Cambridge City and Hagerstown, was thus acquired and owned by the White Water Railroad Company, and that the only equitable relief to which the complainants were entitled was a possible right to redeem from said mortgage, and gave

to the complainants thirty days in which to commence proceedings for such redemption, and ordered that in default of such proceedings the bill should be dismissed. The complainants declined to take any proceedings for that purpose and the bill was accordingly dismissed; and they appealed to this court.

*Mr. C. B. Matthews* for appellants. *Mr. D. Thew Wright* was with him on the brief.

*Mr. Attorney General* for the White Water Valley Railroad Company, appellee.

Mr. JUSTICE FIELD, after stating the case, delivered the opinion of the court, as follows:

From the above brief statement of the case, it is clear that the decree of the court below must be affirmed. The claims of the complainants, whatever validity and force may be given to them as liens upon the earnings of the section of road from Cambridge City to Hagerstown, between the parties agreeing to such liens, are entirely subordinate to the rights of the bondholders under the mortgage of the White Water Valley Railroad Company, executed for their benefit to trustees on the 1st of August, 1865. That mortgage was made before the claims of the complainants had any existence. It covered the entire property of the company then owned by it, including its line of railway from Hagerstown, in Wayne County, to Harrison, in Dearborn County, and all property appertaining to the road which it might afterwards acquire. The validity of mortgages of that character by railroad companies upon property which may be subsequently acquired is not an open question now. It has been affirmed by adjudications of the highest courts of the States as well as by this court. Indeed, in a majority of cases, mortgages by such companies upon their roads and appurtenances have been executed for the purpose of raising the necessary means to construct the roads; and sometimes, indeed, when the lines of such roads

had only been surveyed. In *Galveston Company* v. *Cowdrey*, 11 Wall. 459, 481, there were several deeds of trust which in terms covered after-acquired property, each of which was similar in its character to the one in this case, and the court held that they estopped the company and all persons claiming under them, and in privity with them, from asserting that they did not cover all the property and rights which they professed to cover. Said the court: "Had there been but one deed of trust, and had that been given before a shovel had been put into the ground towards constructing the railroad, yet if it assumed to convey and mortgage the railroad which the company was authorized by law to build, together with its superstructure, appurtenances, fixtures and rolling stock, these several items of property, as they came into existence, would become instantly attached to and covered by the deed, and would have fed the estoppel created thereby. No other rational or equitable rule can be adopted for such cases." See also *Porter* v. *Pittsburg Steel Co.*, 122 U. S. 267, 283, and cases there cited.

The decision in the case of *Galveston Company* v. *Cowdrey* also covers the only plausible position of the complainants, that they have a lien upon the earnings of the section, because with their moneys the road over it was constructed. But the work was not done at the request of the mortgagees, but upon a contract with the lessee of the road, which had stipulated as one of the considerations of the lease to construct that part of the line. With those contractors the bondholders, secured by the mortgage of August 1, 1865, had no relations, and incurred no obligation to them. In the case cited it was contended that priority should be given to the last creditor for aiding to conserve the road. But the court answered that this rule had never been introduced into our laws, except in maritime cases, which stand on a particular reason; that by the common law whatever is affixed to the freehold becomes part of the realty, except certain fixtures erected by tenants, which do not affect the question ; and that the rails put down upon the company's road become a part of the road. Here the same rule applies, and not only the rails, but those perma-

nent fixtures which are essential to the successful operation of the road, become a part of the property of the company, as much so as if they had existed when the mortgage was executed.

The doctrine that a vendor not taking security for the price of realty sold by him holds in equity a lien upon the property for such price is not controverted, but it has no application to the present case. The only right which the complainants possessed was that which was recognized by the decree, a right to redeem the property from the sale under the mortgage, a right which they were allowed to exercise within a specific period; but, they declining to do so, the bill was properly dismissed.

*Decree affirmed.*