CARBON FUEL CO. v. CHICAGO, C. & L. R. CO. et al.

HEWITT MFG. CO. v. OLD COLONY TRUST CO. OF BOSTON, MASS., et al.

(Circuit Court of Appeals, Seventh Circuit. November 19, 1912.)

Nos. 1,843, 1,846.

1. RECEIVERS (§ 152*)—RAILROADS—PRIORITY OF CLAIMS.

Claims for supplies furnished to a railroad company within six months of the appointment of a receiver are not payable out of the corpus in preference to mortgage bondholders, where there has been no diversion of income and no surplus earnings before or after the appointment, unless the supplies and the payment therefor by the receiver are necessary

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to his continuance of the business of the road, and the mere fact that a connecting road may be compelled under the Interstate Commerce Act to transact business with the receiver does not affect the rule.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 272–275, 278; Dec. Dig. § 152.*]

2. RECEIVERS (§ 152*)—RAILROADS—PRIORITY OF CLAIMS.

One furnishing coal and journal bearings to a railroad company within six months of the appointment of a receiver is not entitled to payment out of the corpus in preference to mortgage bondholders, though some of the supplies are on hand and unused at the time of the appointment; a claim for priority not being based on fraud in the acquisition of the supplies, nor facts shown which would have sustained such a claim.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 272–275, 278; Dec. Dig. § 152.*]

3. RECEIVERS (§ 152*)—RAILROADS—PRIORITY OF CLAIMS.

A mere failure to exercise the right to foreclose mortgages given by a railroad company does not, in the absence of fraud, displace the lien on the corpus of the estate in favor of claimants, who, with actual or constructive notice of the existence of the lien, furnished supplies to the company within six months of the appointment of a receiver and after a default justifying foreclosure.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 272–275, 278; Dec. Dig. § 152.*]

4. RECEIVERS (§ 152*)—RAILROADS—PRIORITY OF CLAIMS.

One furnishing supplies to a railroad company within six months of the appointment of a receiver acquires no right to compel payment out of the corpus of the estate in preference to mortgage bondholders, merely because such discretionary power is given to a receiver of the company in the order of appointment as would protect him in case he had actually paid for the supplies.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 272–275, 278; Dec. Dig. § 152.*]

Appeal from the Circuit Court of the United States for the District of Indiana; Albert B. Anderson, Judge.

Suit by George A. Fernald and others against the Chicago, Cincinnati & Louisville Railroad Company, in which James P. Goodrich was appointed receiver of the company, and in which the Old Colony Trust Company of Boston and others were made parties. From decrees denying priority to the Carbon Fuel Company and the Hewitt Manufacturing Company, supply claimants, they appeal. Affirmed.

Thomas B. Paxton, Jr., and Warrington & Seasongood, all of Cincinnati, Ohio, and William Pirtle Herod, of Indianapolis, Ind., for appellants.

Henry C. Starr, of Chicago, Ill., and Albert Baker and F. Winter, both of Indianapolis, Ind., for appellees.

Before KOHLSAAT and MACK, Circuit Judges, and LANDIS, District Judge.

MACK, Circuit Judge. It is unnecessary in these cases to consider the circumstances under which supply claims may be paid out of surplus earnings or because of diverted income. No such question is presented on these records. The important question is whether an in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

debtedness of a railroad to supply claimants, incurred within six months of the appointment of a receiver, shall be paid out of the corpus of the estate in preference to the indebtedness to mortgage bondholders, when there has been no diversion of income and no surplus earnings, either before or after the appointment of the receiver.

[1] The extremely narrow limits within which this may be done are clearly defined in the case of Miltenberger v. Logansport Ry. Co., 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117, as interpreted by the latest decision of the Supreme Court in Gregg v. Metropolitan Trust Co., 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 717. Not only must the indebtedness be a necessary operating expense in keeping and using the railroad and preserving the property in a fit and safe condition, not only must the supplies have been necessary for the *business* of the road, but the *payment* by the receiver of the indebtedness incurred before his appointment must be necessary to his continuance of the business of the road.

That the claim in the Gregg Case was for railroad ties used and to be used in the place of decayed and rotted ties, while in this case it is for coal and journal bearings, is immaterial. If the difference between the majority and minority of the court in the Gregg Case had been based upon the nature of the supplies, if the majority had rejected the claim because in their judgment railroad ties were to be deemed part of the permanent construction of the road and not in the nature of current supplies necessary for the immediate operation and business of the road, that case could be distinguished; but no such difference existed. The concession of counsel, adopted by the court, obviated the necessity of determining whether a claim for ties is strictly of the same character as a claim for coal.

The majority opinion, in stating that the *payment* for the supplies by the receiver, and not merely the supplies themselves, must be essential to the conduct of the business of the road before the claim therefor can displace a mortgage lien upon the corpus, followed the Miltenberger Case. The allowance there made to laborers was based upon the theory, adopted by the court, that the payment of such claims by the receiver is essential to avert the danger of a strike and to secure the continued operation of the road. The payment by the receiver of balances to connecting roads was likewise deemed essential to the further operation of the road because, unless paid, these connecting roads would have refused further to transact business with the receiver.

That a connecting road would now be compelled under the Interstate Commerce Act to transact business with the receiver, is merely an argument that such a claim as was allowed, prior to this act, in the Miltenberger Case, should no longer be entitled to such priority. It furnishes no basis, however, for counsel's contention that the rule laid down in that case, so narrowly restricting the priority of supply claims as against the corpus, is now to be disregarded.

[2] The fact that some of the supplies were on hand and unused at the time the receiver was appointed gives the claimants no priority. As the court says in the Gregg Case:

"The material point is not the time when they were used, but the time when they were acquired."

The claim for priority is not based upon any allegation of fraud in the acquisition of the supplies, and no facts have been shown which would have enabled the claimants to reclaim so much of their property as was on hand at the time of the appointment of the receiver, even if the petitions had been based upon a right to rescind the contract.

[3] Moreover, in our judgment, there is no basis for the creation of an estoppel as against any of the parties, either because of certain loans made by the trustee, or because of any possible failure to begin foreclosure proceedings at an earlier date. It is therefore unnecessary to determine whether, under the terms of the mortgage, the trustee might have begun foreclosure proceedings prior to the expiration of six months after default. Even if such a right existed, a mere failure to exercise it, in the absence of fraudulent conduct, will not operate to displace a lien on the corpus of the estate in favor of claimants, who, with actual or constructive notice of the existence of the lien, have furnished supplies after such default.

[4] The Gregg Case, moreover, is binding authority for the proposition that, even if such a discretionary power may have been given to a receiver in the order of appointment as would protect him in case he had actually paid supply claimants, no rights are given to the claimants themselves to demand priority, merely because of such an order.

The decrees of the Circuit Court, approving the special master's report and denying priority to the appellants' claims, will therefore be affirmed.