### TAYLOR v. DELAWARE & E. R. CO. et al.

(Circuit Court of Appeals, Second Circuit. April 21, 1914.)

No. 41.

RECEIVERS (§ 158*)—MORTGAGES—OPERATION EXPENSES—PAYMENT—PRIORITY.

Where there had been no diversion of income by a railroad company to pay interest to bondholders, but the expenses of operating the road during receivership exceeded the income by $84,000, which was necessarily paid out of the corpus of the estate, the fact that the receivers paid various sums for rental of equipment, for wages, station rentals, and balances due connecting lines incurred within four months prior to receiver-

ship, and to replace worn-out ties and rails, and for maintenance necessary to a continued operation of the road by the receivers, did not entitle claimant to priority of payment for coal furnished the railroad company within four months prior to the receivership in advance of the lien of the first mortgage.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 301–306; Dec. Dig. § 158.*]

Appeal from the District Court of the United States for the Southern District of New York.

Action by Clyde C. Taylor against the Delaware & Eastern Railroad Company and another. Application by the Shawmut Coal & Coke Company for priority of payment for coal furnished the railroad company prior to the appointment of receivers as a prior claim to the lien of the first mortgage. From a decree denying priority, claimant appeals. Affirmed.

F. W. Frost, of New York City, for appellant.
Carlisle J. Gleason, of New York City, for appellees.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. The Delaware & Eastern Railroad Company was the owner of a railroad about 45 miles long, which was leased to the Delaware & Eastern Railway Company in consideration of that company's paying all expenses of maintenance and operation and the interest on bonds aggregating $1,000,000, secured by a mortgage on the property. The road was always operated at a loss.

February 25, 1910, the company being insolvent and interest on the bonds in arrear for 18 months, the same persons were appointed receivers of both companies. The railroad was in a very bad condition, wages for two months, moneys due connecting roads for station rentals and freight interchanges and bills for car repairs were unpaid.

March 4, 1910, the court authorized the issuance of receivers' certificates to pay these items and certain estimated expenses for the operation of the road by the receivers during the month of March, which certificates were to be a primary obligation of the railway and a first lien upon the property of the railroad company.

August 16, 1911, the property was sold for $150,000 under a decree foreclosing the mortgage to a reorganization committee of the bondholders. This is the only fund to which creditors of the railway company or of the railroad company can resort for payment of their claims.

January 16, 1912, the accounts of the receivers were approved and they were ordered to pay their own fees, the fees of their attorneys and the balance to a special master appointed in the foreclosure suit to report whether any claims of creditors were entitled to priority over the first mortgage.

The Shawmut Coal & Coke Company had delivered coal to the railway company necessary to its operation within four months prior to the receivership at the price of $2,041.69. The special master reported to the effect that no claims against either company had priority

to the lien of the first mortgage, the District Judge confirmed the report, and the coal company took this appeal.

There was no direct diversion of income to pay the interest to the bondholders, but the appellant contends that surplus income had been applied by the receivers to permanent improvements of the property for the benefit of the bondholders, and to that extent the lien of the mortgage should be displaced. Southern Railway Co. v. Carnegie Steel Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458. On the contrary, the special master and the court below have found that the expenses of operating the road during the receivership exceeded the income by some $84,000, which had to be paid out of the corpus of the estate.

The appellant contends that there should be deducted from the alleged expense of operation the following sums:

$34,406 paid by the receivers on account of rental for cars, because this increased the security of the bondholders. This is true, but car equipment was essential to the operation of the road, and the special master has reported that 'if this rental had not been paid the receivers would have been obliged to rent cars elsewhere at about an equal expense.

$15,908.17 paid on account of wages, station rentals, and balances due connecting lines incurred within four months prior to the receivership. It is said that these charges were entitled to no greater consideration than was the bill for coal. This may be so, but it is entirely within the discretion of the court to determine which, if any, of such claims shall be paid by receivers, and it is those which are not only necessary, but whose *payment* is necessary to keep the road a going concern, which should be paid out of the corpus of the property. Gregg v. Metropolitan Trust Co., 197 U. S. 186, 25 Sup. Ct. 415, 49 L. Ed. 717. It is to be presumed that the court found payment of these claims necessary.

$10,251.48 spent by the receivers to replace worn-out ties and rails and $43,949.16 for maintenance. It is said that these outlays enhanced the value of the mortgaged premises. While this is true, these expenses have been found to have been necessary for the continued operation of the road by the receivers, and even if they were deducted there would still be a deficit in operation of some $30,000.

We agree with Judge Hand that there was no surplus income in the hands of the receivers out of which the appellant's claim could have been paid. The court had no power to charge the claim on the corpus of the property to the prejudice of the mortgagee. Fosdick v. Schall, 99 U. S. 235, 253, 25 L. Ed. 339; Gregg v. Metropolitan Trust Co., supra.

It was also suggested that the appellant continued to supply coal to the receivers upon the tacit understanding that they would pay for that supplied before the receivership. Even if this be material, the proofs do not establish it.

The decree is affirmed.