CHICAGO & A. R. CO. v. UNITED STATES & MEXICAN TRUST CO. et al.

(Circuit Court of Appeals, Eighth Circuit. July 2, 1915.)

No. 4340.

*(Syllabus by the Court.)*

1. RAILROADS ⬅➡209—MORTGAGES—INCOME—PRIORITY.
    Where the mortgaged property of a railroad company is placed in the hands of a receiver before the commencement of a suit to foreclose the mortgage and a subsequent suit for that purpose is commenced, the proceedings do not impound the income for the benefit of the mortgage bondholders, until either a demand has been made of the receivers to surrender the income and the administration of the property which has been refused, or an intervention has been made in the earlier suit, or an application for an order to impound the income for the benefit of the bondholders has been made to the court, or the receivership has been extended to the later suit, or receivers have been appointed therein.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 692–695; Dec. Dig. ⬅➡209.]

2. RAILROADS ⬅➡173, 197—MORTGAGES—FORECLOSURE.
    A mortgagee of the property and income of an operating railroad company impliedly agrees that the current expenses of the ordinary operation of the railroad for wages, supplies, materials, and like necessities of operation, for six months before the impounding of the income for its benefit, may be first paid out of the gross income of operation before that net income arises which the mortgagee's lien holds fast.

    A court of equity, administering railroad property in a foreclosure suit, may prefer claims for such current expenses to the claims of bondholders in payment out of the surplus income of the railroad property to the claims of mortgage bondholders secured by a prior mortgage.

    If the current income of the property has been diverted from the payment of claims for such current expenses to claims not of this preferential class, leaving claims for such current expenses unpaid, the court may, from the proceeds of the corpus of the mortgaged property, restore and apply to the payment of the unpaid claims for such current expenses the amount so diverted.

    But if there has been no diversion there can be no restoration. and the amount that may be so restored and applied may not exceed the amount so diverted.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 581–587, 662; Dec. Dig. ⬅➡173, 197.]

3. RECEIVERS ⬅➡158—RAILROADS—PRIORITY OF CLAIMS—BALANCES.
    Conceding, but not admitting, that it is the duty of a railroad company, connecting with a mortgagor railroad company, to receive and transport freight billed over its line by the mortgagor company, that fact does not render its claims for balances of repairs of cars, loss and damage claims, or overcharges arising from the discharge of that duty, entitled to preference in payment out of the income or out of the corpus of the

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

mortgagor's property over the claims of bondholders secured by a prior mortgage.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 301–306; Dec. Dig. ☞158.]

4. RECEIVERS ☞158—RAILROADS—PRIORITY OF CLAIMS—"TRAFFIC BALANCES."
"Traffic balances" are the balances of moneys collected in payment for the transportation of passengers and freight. ·Claims for balances for car repairs, loss and damage, and overcharges are not traffic balances.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 301–306; Dec. Dig. ☞158.]

5. RECEIVERS ☞47—ORDERS—CONSTRUCTION.
An order made in the appointment of receivers, or in the consolidation of causes, which authorizes, but does not direct or order, receivers to pay certain classes of claims, does not adjudge that claims within those classes, which the receivers did not pay under the order, are entitled to preference in payment, either out of the income or out of the corpus of the property, over the claims of bondholders secured by a prior mortgage.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 72; Dec. Dig. ☞47.]

6. RECEIVERS ☞158 — RAILROADS — RIGHT OF MORTGAGEE — PRIORITY OF CLAIMS.
The claims of bondholders, secured by the lien of a recorded mortgage on the property, the after-acquired property, and the income of a railroad company, to payment out of the proceeds of the mortgaged property, are, in the absence of special circumstances, such as a surplus, or a diversion of income, prior in right and superior in equity to the claims of subsequent creditors of the mortgagor company for unpaid current expenses, although, when the mortgage was made and recorded, the railroad was not built, and the mortgage disclosed the fact that it was made to raise the money to build it.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 301–306; Dec. Dig. ☞158.]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit by the United States & Mexican Trust Company and others against the Kansas City, Orient & Mexico Railway Company and others, in which the Chicago & Alton Railroad Company intervened. From a judgment denying the intervener relief, it appeals. Affirmed.

William C. Scarritt, Elliott H. Jones, Charles M. Miller, Paul Pinkerton, and Edward L. Scarritt, all of Kansas City, Mo., for appellant.

Samuel Untermyer, of New York City, and Samuel W. Moore, of Kansas City, Mo., for appellees.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

SANBORN, Circuit Judge. The complaint of the appellant in this case is that the court below refused to order $1,074.14, balances due it from the Kansas City, Orient & Mexico Railway Company for car repairs, loss and damage claims on shipments of freight, and overcharges, paid out of the corpus of the latter's property in preference to the claims of bondholders secured by a prior mortgage thereon. The

mortgage was made on February 1, 1901, and it created a lien upon the property, the after-acquired property, and the income of the Orient Company to secure the payment of the bonds issued thereunder. The repairs and overcharges were made, and the loss and damage claims were incurred, between January 9, 1910, and March 7, 1912, when a creditors' bill was filed against the Orient Company, and receivers were appointed by the court below, who took possession of its property and proceeded to operate its railroad. Afterwards, on August 7, 1912, the trustee named in the mortgage filed a bill to foreclose it, and on December 24, 1912, the two suits were consolidated, the receivership was extended over the foreclosure suit, and the income of the railway company was first impounded for the benefit of the bondholders secured by the mortgage.

[1] Where the mortgaged property of a railroad company is placed in the hands of a receiver before the commencement of a suit to foreclose the mortgage, and a subsequent suit for that purpose is commenced, the proceedings do not impound the income for the benefit of the mortgage bondholders until either a demand has been made of the receivers to surrender the income and the administration of the property, which has been refused, or an intervention has been made in the earlier suit, or an application for an order to impound the income for the benefit of the bondholders has been made to the court, or the receivership has been extended to the later suit, or receivers have been appointed therein. Gilman v. Telegraph Co., 91 U. S. 603, 617, 23 L. Ed. 405; Galveston R. R. Co. v. Cowdrey, 11 Wall. 459, 20 L. Ed. 199; Freedman's Saving Co. v. Shepherd, 127 U. S. 494, 502, 8 Sup. Ct. 1250, 32 L. Ed. 163; United States Trust Co. v. Wabash Railway, 150 U. S. 287, 305–309, 14 Sup. Ct. 86, 37 L. Ed. 1085; Agra & Masterman's Bank v. Barry, 3 Irish Reports, Equity, 443, 450; Howell v. Ripley, 10 Paige (N. Y.) 43, 48; American Loan & Trust Co. v. Central Vermont R. Co. (C. C.) 86 Fed. 390, 392; American Bridge Co. v. Heidelbach, 94 U. S. 798, 24 L. Ed. 144; Teal v. Walker, 111 U. S. 242, 249, 250, 4 Sup. Ct. 420, 28 L. Ed. 415; Atlantic Trust Co. v. Dana, 128 Fed. 209, 219, 62 C. C. A. 657, 667; Hook v. Bosworth, 64 Fed. 443, 448, 12 C. C. A. 208.

On January 6, 1914, the Chicago & Alton Railroad Company intervened in the consolidated cause, set forth its claim, and prayed its payment in preference to the payment of the claims of the bondholders. On February 2, 1914, a decree of foreclosure of the mortgage and of sale of the mortgaged premises to pay the bonds, aggregating $24,-538,000, which were thereby adjudged to be secured by the mortgage by a first lien from February 1, 1904, on the property, the after-acquired property, and the income of the railroad company, was rendered and on July 6, 1914, the mortgaged property was sold for $6,001,000 to the Kansas City, Mexico & Orient Railroad Company. There was no diversion of the income of the railway company from the payment of the current expenses of the ordinary operation of the railroad for wages, materials, supplies, and like necessities of operation to the payment of claims of an inferior class, such as for interest on a bonded debt, for borrowed money, and for unnecessary improvements of the

mortgaged property, and the only question was whether or not the claim of the intervener was entitled in equity to a preference over the claims of the bondholders in payment out of the proceeds of the body of the property. The court below was of the opinion that $1,074.-14 of it was not so entitled, and the intervener has appealed to this court to reverse that decision.

The first impression which the facts in this case make upon the mind is that the ruling of the court was right. The railway company made and recorded a trust deed of its property, its after-acquired property, and its income on February 2, 1901, whereby it fastened a first lien thereon to secure the payment of the bonds issued thereunder. Thereafter the intervener, in the face of the prior mortgage, extended credit to the Orient Railway Company for the balances of car repairs, loss and damage claims, and overcharges for which it makes its claim. The lien of the mortgage was of record, and the intervener had legal notice of it. After that mortgage was made and recorded the Orient Company had no power by any contract or promise it could make to give any of its other debts a lien on its property superior to that of the mortgage bondholders, and it never made or tried to make any such agreement or promise. When these balances for car repairs, loss and damage claims, and overcharges are analyzed and thoughtfully considered, they amount to nothing more than simple debts of the Orient Company for labor done and for money advanced by the intervener for the mortgagor company subsequent to and with notice of the prior lien of the mortgage. So it seems that the intervener has no right at law or in equity by virtue of any promise or agreement of the Orient Company, or of the bondholders, to payment in preference to the latter out of the proceeds of the mortgaged property.

[2] It is true that a mortgagee of the property and income of an operating railroad company impliedly agrees that the current expenses of the ordinary operation of the railroad for wages, supplies, materials, and such necessities of operation for six months before the impounding of the income for its benefit may be first paid out of the gross income of operation, before that net income arises which the mortgagee's lien holds fast, and that a court of equity administering railroad property in a foreclosure suit may prefer unpaid claims for such current expenses incurred within six months before the impounding of the income to the claims of bondholders secured by a prior mortgage in its distribution of the surplus income of the property, and that if income has been diverted from the payment of such current expenses, leaving some of them unpaid, to the payment of other debts of the mortgagor not in this preferential class, the court may restore from the proceeds of the corpus of the property the amount thus diverted and apply it to the payment of such current expenses. But if there has been no diversion there can be no restoration, and the amount of the restoration cannot exceed the amount of the diversion. Conceding, without admitting, that the consideration of the claim of the intervener is a part of the current expenses of the ordinary operation of the railroad for necessities of operation, such as wages and supplies, so that

it might be preferred in payment out of surplus income, or out of moneys taken from the proceeds of the corpus of the property and restored to the place of moneys diverted from the payment of current expenses, yet there is no such surplus income in this case, and there was no such diversion, therefore there can be no restoration, and no payment of this claim out of the proceeds of the sale of the property. It is only when current income has been diverted from the payment of current expenses of the ordinary operation of the railroad for wages, supplies, and such necessities of operation, leaving a part of such current expenses unpaid, and applied to the payment of interest on bonds, or of claims for construction, or for unnecessary betterments and the like, which inure to the benefit of the bondholders, that claims for such current expenses may be paid out of the proceeds of the body of the property. Gregg v. Metropolitan Trust Co., 197 U. S. 183, 190, 25 Sup. Ct. 415, 49 L. Ed. 717; Carbon Fuel Co. v. Chicago, C. & L. R. Co., 202 Fed. 172, 174, 120 C. C. A. 460; Illinois Trust & Savings Bank v. Doud, 105 Fed. 123, 131, 132, 148, 149, 44 C. C. A. 389, 52 L. R. A. 481; Rodger Ballast Car Co. v. Omaha, K. C. & E. R. Co., 154 Fed. 629, 632, 83 C. C. A. 403.

[3] Notwithstanding the facts, and the established principles and rules of equity adverted to, counsel for the intervener insist that its claim should be preferred in payment out of the proceeds of the sale of the body of the mortgaged property. They contend that it should be so preferred in payment because the intervener was a common carrier, and a connecting carrier with the mortgagor company, and was in duty bound under the law to accept and carry shipments of freight billed over its road by the mortgagor, and they cite in support of this contention the act of Congress which imposes on the initial carrier liability to the holder of a bill of lading or receipt for an interstate shipment for any loss or damage to the property shipped caused by it, or by any common carrier to which the property is delivered—34 Stat. 584, 595, c. 3591, § 7, U. S. Comp. Stat. 1913, § 8592, p. 3875 (11)— and the fact that it is unlawful for a common carrier engaged in interstate commerce to overcharge a shipper. They cite no act of Congress, however, and no decision of any court, that a mortgagor railway company, which, as a common carrier, or a common carrier which, as a connecting carrier therewith, or both together, may, by failing to pay their debts to each other, or by overcharging shippers, or by any other wrongful act, deprive bondholders of the mortgagor company of their prior lien, or impose upon them penalties for the wrongdoing of the carriers. Conceding, but not admitting, that it is the duty of connecting carriers engaged in interstate commerce to receive and carry freight billed over their lines by other railroad companies, it does not follow that the discharge of that duty, or the failure to discharge it, deprives bondholders secured by a prior mortgage of their lien, or makes any debt or obligation of the mortgagor company arising out of the discharge or out of the failure to discharge that duty superior in equity to the lien of the bondholders. As the assumption of the duties and the conduct of the business of a common carrier, and the continuance of that assumption and the discharge of that duty, are not compulsory

upon any corporation, but constitute a voluntary undertaking, a corporation which enters into or continues that undertaking in the face of a mortgage on a connecting line does not thereby render its claims against the mortgagor company arising therefrom superior in equity to those of the bondholders secured by a prior mortgage upon its property.

The second contention of counsel for the intervener is that its claim is entitled to preference in payment out of the corpus of the mortgaged property, because it is founded on services rendered by it which were "absolutely necessary to the business of the railway to keep the road a going concern from day to day, so that the company's property would be preserved, and its public duty discharged." It is a complete answer to this contention that the Supreme Court has decided, and that decision still stands without reversal or modification, that even a claim of such a nature accruing within six months prior to the receivership may not be preferred in payment out of the corpus of the mortgaged property to the claim of the bondholders secured thereon in the absence of that diversion of income which is lacking in this case. Gregg v. Metropolitan Trust Co., 197 U. S. 183, 190, 25 Sup. Ct. 415, 49 L. Ed. 717.

Moreover, there are two grounds—(1) the diversion of income; and (2) the necessity or business policy of immediate payment—on which claims for current expenses for necessities of operation have been paid out of the corpus of the property. Miltenberger v. Logansport Railway Co., 106 U. S. 286, 308, 311, 1 Sup. Ct. 140, 27 L. Ed. 117; Union Trust Co. v. Illinois Midland Co., 117 U. S. 434, 457, 6 Sup. Ct. 809, 29 L. Ed. 963. But the decisions of the Supreme Court in the cases in which such claims were allowed on the second ground were rendered more than 15 years ago, before the series of decisions found in Kneeland v. American Loan & Trust Co., 136 U. S. 89, 98, 10 Sup. Ct. 950, 34 L. Ed. 379, Morgan's Co. v. Texas Central Railway, 137 U. S. 171, 196, 198, 11 Sup. Ct. 61, 34 L. Ed. 625, Thompson v. Valley Railroad Co., 132 U. S. 68, 71, 73, 10 Sup. Ct. 29, 33 L. Ed. 256, Thomas v. Western Car Co., 149 U. S. 95, 110, 13 Sup. Ct. 824, 37 L. Ed. 663, Southern Railway Co. v. Carnegie Steel Co., 176 U. S. 257, 296, 20 Sup. Ct. 347, 44 L. Ed. 458, Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co., 176 U. S. 298, 315, 20 Sup. Ct. 363, 44 L. Ed. 475, and Gregg v. Metropolitan Trust Co., 197 U. S. 183, 190, 25 Sup. Ct. 415, 49 L. Ed. 717, which so narrowly limit and clearly define preferential claims, were rendered, and the earlier cases were largely controlled by the element of estoppel. A thoughtful consideration of those cases and others which have followed them, and of the opinions in the later cases in the Supreme Court which have been cited, convinces that if claims of the nature of those allowed as preferential in the Miltenberger and Union Trust Company Cases were now presented, under objection of bondholders under no estoppel, to the Supreme Court, they would be denied preference over the claims of the bondholders in payment out of the corpus of the mortgaged property.

Again, if a claim for the current expenses of the necessities of the

operation of a railroad is payable in preference to the claims of secured bondholders out of the corpus of the property in any case in the absence of diversion of the income from such expenses, it is only when such preferential payment is necessary to keep the railroad a going concern, or when its preferential payment is necessary to prevent a loss at least equal to the amount of the payment. Gregg v. Metropolitan Trust Co., 197 U. S. 186, 187, 25 Sup. Ct. 415, 49 L. Ed. 717; Moore v. Donahoo, 217 Fed. 177, 181–183, 133 C. C. A. 171; Taylor v. Delaware & E. R. Co., 213 Fed. 622, 624, 130 C. C. A. 214. The evidence in this case goes no farther than the testimony of one witness that it was not necessary for the mortgagor company, or the receivers, to ship freight on the railroads of other companies, but that they could take it on junction settlement, instead of on interstate account, although they generally have such interline accounts with connecting carriers as that out of which the intervener's claim for the balances arose, and that if these claims for balances were unpaid, and the connecting carriers refused to carry their freight, this would disrupt their freight, and be a serious detriment to their business. This evidence falls far short of proof that the preferential payment of the intervener's claim was either necessary to keep the Orient Company's railroad a going concern, or to prevent a loss as great as the amount of its payment, and it is therefore not entitled to preference in payment on that ground.

[4, 5] Three hundred and seven dollars and twenty-four cents of the intervener's claim accrued between September 1, 1911, and March 7, 1912, when the receivers were appointed under the administration bill, and in the order appointing them the court authorized them to pay out of any income or revenue coming to their hands debts contracted by the Orient Company after September 1, 1911, for services of employés in the operation of the railroad, for necessary materials and supplies and for traffic balances. Counsel suggest that this order adjudged the intervener's claim for these $307.24 entitled to preference in payment over the claims of the bondholders. There are many reasons against the adoption of this suggestion. In the first place, traffic balances are the balances of money collected in payment for the transportation of passengers and freight. The balances for car repairs, loss and damage claims, and overcharges are not traffic balances. In the second place, the order of March 7, 1912, was made in the absence of notice to the trustee or the bondholders under the mortgage, and before it or they became parties to the proceedings. That order, therefore, could not be an adjudication of their rights as against the intervener to prior payment under the lien of their mortgage. Not only this, but the order does not direct or command the payment of the claims mentioned. It merely authorizes the receivers to pay such of them as in their good judgment they deem it desirable to pay, and they deemed it inadvisable to pay the claim of the intervener. That preliminary order of appointment of the receivers was, therefore, no adjudication of the right to the preference in payment of any of the parties in interest in the question now under consideration. An order made in the appointment of receivers, or in the con-

solidation of causes, which authorizes, but does not direct or order, receivers to pay certain classes of claims, does not adjudge that claims within these classes which the receivers did not pay under the order are entitled to preference in payment, either out of the income or out of the corpus of the property over the claims of bondholders secured by the prior mortgage.

[6] Finally, counsel for the intervener argue that it is entitled to a preference over the bondholders because they bought their bonds with notice, disclosed in the face of the trust deed itself, that their bonds were issued and the trust deed was made to raise money to build the railroad, that the railroad was not completed, and that its construction had only been commenced. This contention, however, is put at rest by the opinions and decisions of the Supreme Court in Dunham v. Railway Co., 1 Wall. 254, 266, 267, 17 L. Ed. 584, Galveston Railroad v. Cowdrey, 11 Wall. 459, 481, 20 L. Ed. 199, Thompson v. Valley R. R. Co., 132 U. S. 68, 73, 74, 10 Sup. Ct. 29, 33 L. Ed. 256, Porter v. Pittsburgh, Bessemer Steel Co., 120 U. S. 649, 670, 671, 7 Sup. Ct. 1206, 30 L. Ed. 830, Toledo, etc., R. R. Co. v. Hamilton, 134 U. S. 296, 298, 299, 300, 10 Sup. Ct. 546, 33 L. Ed. 905. The claims of bondholders secured by the lien of a recorded mortgage on the property, the after-acquired property, and the income of a railroad company, to payment out of the proceeds of the mortgaged property are, in the absence of special circumstances, such as a surplus, or a diversion of income, prior in right and superior in equity to the claims of subsequent creditors of the mortgagor company for unpaid current expenses, although when the mortgage was made and recorded the railroad was not built, and the mortgage disclosed the fact that it was made to raise the money to build it.

Let the order below be affirmed.