## LOUISVILLE BRIDGE CO. v. CHICAGO, I. & L. RY. CO.

(Circuit Court of Appeals, Seventh Circuit.   August 1, 1918.)

No. 2251.

1. RECEIVERS ⊚⟼160—CLAIMS—PRIORITY—UNSECURED CLAIMS.
   Where a contract between a bridge company and a railroad company which used the bridge provided for termination in case of the railroad's default for 30 days in payment, the bridge company is not, as against mortgagees, entitled to priority out of surplus earnings during receivership on claims some of which were more than 6 years old when the receiver was appointed, and all of which arose more than 16 months prior thereto.

2. RECEIVERS ⊚⟼158(4)—CLAIMS—PRIORITY—PURPOSE OF DEBT.
   In receivership proceedings a bridge company was not entitled to priority against mortgagees of a railroad company for claims for use of its bridge by the railroad: it appearing that credit was extended upon the strength of the railroad company's general credit and that the debt was not a current income debt.

3. RAILROADS ⊚⟼139—CONTRACT BETWEEN RAILROAD AND BRIDGE COMPANY.
   A contract whereby a railroad company agreed to make certain payments to a bridge company for the use of a bridge, the payments being computed on the bridge company's capital and expenses, etc., held not to create any trust in favor of the bridge company in event of nonpayment by the railroad company, on the theory that the bridge company was entitled to share in the freight and passenger receipts of the railroad company, etc.

4. RECEIVERS ⊚⟼158(4)—CLAIMS—PRIORITY—NET EARNINGS.
   Where the claim of a bridge company against a railroad company for use of bridge was not entitled to priority, the bridge company is not entitled to net profits during receivership as against a mortgagee whose lien covered, not only the property of the railroad, but the rents and profits derived therefrom.

Appeal from the District Court of the United States for the District of Indiana.

Petition by the Louisville Bridge Company to intervene in a foreclosure suit against the Louisville, New Albany & Chicago Railway Company and have its claim allowed as a prior claim.   The petition was opposed by the Chicago, Indianapolis & Louisville Railway Company, and petitioner appeals from a decree denying the petition.   Affirmed.

The Louisville, New Albany & Chicago Railway Company, known as the Monon road, predecessor to appellee, executed five mortgages to secure bonds aggregating $14,100,000.   The last three, being for $8,500,000, were foreclosed in this suit, although the proceedings leading to the appointment of the receiver were instituted by a judgment creditor, after a nulla bona return of the execution had been filed.   The various foreclosure suits were merely consolidated with this judgment creditor proceeding and the receivership continued. The receiver operated the road from August 24, 1896, to June 30, 1897, when it was turned over to appellee, the purchaser on foreclosure suit, pursuant to a sale previously made and then confirmed;   the selling price being far less than the face value of the three mortgages.

Appellant timely presented its claim for $187,354.38 and interest, and no question of amount or liability is raised.   Appellant asserts and appellee denies priority of this claim over the lien of the mortgages and the rights of the purchaser on the foreclosure sale.

⊚⟼For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appellant owned and maintained a bridge across the Ohio river at Louisville, Ky., which is connected on the north by tracks of the main line of the railway company, and on the south with terminal tracks, freight depot, and yards of such company; the city of Louisville being the southern terminus of the line of the railway company. On June 5, 1872, an agreement was made between appellant and several railroads, which agreement provided for the use of the bridge and the compensation for such use. Another agreement made February 1, 1882, between appellant and appellee's predecessor, extended the terms of the agreement to appellee.

By this contract the railroad companies agreed to pay the bridge company for the use of the bridge a sum sufficient to produce in the aggregate an amount equal to the cost and expense of keeping in repair the said bridge, tracks, and other structures appurtenant thereto, and paying a dividend semiannually of 4 per cent. on a capital stock of $1,500,000, and the interest upon bonds, as the same matured, and a sinking fund sufficient to pay off bonds to the amount of $800,000 at maturity; all charges were to be the same to all carriers for like service. The accounts for all expenditures, tolls, and charges were to be carefully kept, a statement rendered each month succeeding the date the items accrued and the same were to be paid within 30 days from the date of the rendition of such monthly account. If any difference arose between the parties it was to be submitted to arbitration.

It was expressly provided: "But it is distinctly agreed and understood that if the railroad company shall at any time be in default in the payment of any of the sums of money herein by it stipulated to be paid, or in the performance of any of the obligations herein by it stipulated to be performed, then at the option of the party in respect to whom such default occurs, but not otherwise, and upon 30 days' notice in writing, all the rights and privileges herein conferred upon the third party shall cease and determine, and this agreement cease to be of any force or effect whatever."

It was expressly agreed that the consideration passing to the bridge company for this agreement was the promise on the part of the railroad company to pass all its freight, passengers, mails, express matter and other goods carried by it over the bridge of the appellant to and from Louisville. The railroad company agreed that it would "pay punctually * * * the tolls and charges herein provided for the use by the railroad company of said bridge, etc."

Appellant's claim arose out of the failure of the railway company to pay the various amounts thus provided for by this agreement. The statement of appellant's account is as follows:

| | | |
|---|---|---|
| April 1, 1895. Due as per agreed statement of account, and Blodgett award, excluding Monon share of contested taxes and its share of L. & N. surplus subsequently recovered by L. & N. | | $ 97,358.58 |
| Monon's share of above taxes | | 25,887.32 |
| Monon's share of above L. & N. surplus for the years 1888, 1889, 1890, 1891 | $33,457.91 | |
| For the years 1892, 1893, 1894, 1895 | 38,325.00 | 71,782.91 |
| | | $195,028.81 |
| Deduct payments made by Monon and its share of surplus April 1, 1895, to August 24, 1896, in excess of amounts payable by it for same period | | 7,674.43 |
| | | $187,354.38 |

The receiver made a final report, which was duly approved by the court, and which contained the following:

| | |
|---|---|
| Gross earnings | $2,527,160.12 |
| Operating expenses and taxes | 1,728,756.98 |
| Leaving net earnings | $ 798,403.14 |

This balance of "net earnings" was attacked by appellee as being incorrect, and the master, to whom all issues were referred found: "There was no surplus of earnings during the receivership. * * * There was no diver-

sion of the earnings during the receivership to the prejudice of the intervener. * * * There is no special equity in the intervener's favor that entitled the intervener to preferential payment out of the proceeds of the foreclosure sale."

The master's report was approved and the petition dismissed. Appellant assigns error for thus dismissing its petition and asserts that its claim was entitled to priority over the claims of mortgagees and those claiming under them in and to the net earnings of the company during receivership; that there was in fact a net profit earned during the receivership, and that such net profit should be devoted to the payment of its claim, or if that be now impossible, that it have a lien for such amount upon the road prior to the equity of the appellee.

Lawrence Maxwell, of Cincinnati, Ohio, for appellant.

Ferdinand Winter and William L. Taylor, both of Indianapolis, Ind., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge (after stating the facts as above). Two questions are presented for our consideration: (a) Was appellant's claim entitled to priority over the lien of the mortgages? (b) Were there any net earnings during the receivership? It is conceded that the appellee stands in no better position than the last three mortgagees, whose mortgages were foreclosed by this suit.

Appellee contends that the indebtedness of the Monon road to appellant was not for "current expenses" and such indebtedness was, therefore, not entitled to priority over the lien of the mortgagees. It further contends that even though the consideration for this claim would otherwise have entitled appellant to priority, such priority must be denied because the claim arose more than 6 months prior to the appointment of the receiver.

Appellant, on the other hand, contends that as the holder of a claim for current expenses it is entitled to priority over the lien of the mortgagees so far as the net profits of the company earned during the receivership in suit are concerned; that the 6 months period fixed in some jurisdictions and in some instances, is not an absolute or arbitrary period but must give way to facts showing reasons for its nonapplicability, that such reasons exist in the present case. Appellant also insists that in the present case the Monon road was a trustee holding amounts collected from passengers and shippers in trust for appellant, the cestui que trust.

Questions of asserted priority of claims such as here considered, over liens of mortgages, have frequently been before the courts for determination. It has been uniformly held that not only must the claim be for "current expenses" but the claims must not be stale. In many jurisdictions a time limit of 6 months next preceding the appointment of a receiver is fixed as the period during which the claim must have arisen to entitle it to consideration. Turner v. Indianapolis, B. & W. Ry., Fed. Cas. No. 14,258, 8 Biss. 315; Westinghouse Air Brake Co. v. Kansas City Southern Ry. Co., 137 Fed. 26, 71 C. C. A. 1; Moore v. Donahoo, 217 Fed. 177, 133 C. C. A. 171; Carbon Fuel Co. v. C., C. & L. R. Co., 202 Fed. 172, 120 C. C. A. 460; C. & A. Ry. v. Mexican Trust Co., 225 Fed. 940, 141 C. C. A. 64; Texas Co. v. International & G. N. R. Co., 237 Fed. 921, 150 C. C. A. 571; Crane Co.

v. Fidelity Trust Co., 238 Fed. 693, 151 C. C. A. 543; Roebling Sons Co. v. Idaho Ry., L. & P. Co., 243 Fed. 527, 156 C. C. A. 225; Gregg v. Metropolitan Trust Co., 197 U. S. 196, 25 Sup. Ct. 415, 49 L. Ed. 717. Other courts reject the 6 months period as arbitrary and unjustifiable. Northern Pacific Ry. v. Lamont, 69 Fed. 23, 16 C. C. A. 364; Blair v. St. L., H. & K. R. Co. (C. C.) 22 Fed. 471; Wood v. N. Y. & N. E. R. Co. (C. C.) 70 Fed. 741; Hale v. Frost, 99 U. S. 389, 25 L. Ed. 419; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675, 28 L. Ed. 596; Beach on Receivers, p. 414.

[1] It is not necessary in this case to adopt any hard and fast period of limitation to dispose of the claims here under consideration; for if we adopt the rule announced by the last above cited cases, we are still unable to bring the appellant's claims within such a period as will permit of their allowance in advance of the lien of the mortgages. Some of these claims were 6 years old at the time the receiver was appointed, and all of the claims arose more than 16 months prior to such appointment. The presence of the provision in the agreement which gave to the bridge company at any time the right to terminate the contract upon 30 days' notice for failure of the railroad company to pay the amounts due, affords ample support for this conclusion. As against the mortgagees it would be unjust and inequitable to give petitioner priority of lien when it is apparent that claimant had at all times an effective weapon for the collection of its account.

[2] We are also convinced that upon all the facts and circumstances in this case, appellant does not bring its claim within the rule entitling it to priority over the lien of the mortgages, even though the question of time be waived. The fact that the bridge company reserved the express right to terminate the contract upon failure of the railroad company to promptly pay its indebtedness is equally significant on this phase of the case. Thomas v. Western Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663. In that case the court said:

"Such provision shows that the car company was aware of the existence of the outstanding bonds, and protected itself by other methods than relying upon the possible order of a court which might appoint a receiver."

The contract made by the parties in this case was one of mutual benefit. The bridge company owned a bridge, the value of which in part depended upon the extent of the use to which it was put. The carrier was obviously benefited in that it was not required to construct a bridge itself. In order to secure all the business of the railroad company and to make more certain its fixed income, this agreement was made, the duration of which was in part dependent upon the action of appellant. It extended the time of payment from month to month upon the strength of the credit of the railroad company.

The acts and conduct of the parties add strength to this conclusion. The president of the bridge company testified:

"The railroad companies using the bridge simply paid on account from time to time according to their convenience."

As stated in Southern Railway v. Carnegie Steel Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458:

"Whether the debt was contracted upon the personal credit of the company, without any reference to its receipts, is to be determined in each case by the amount of the debt, the time and terms of payment, and all other circumstances attending the transaction."

We conclude the credit was extended upon the strength of the railroad company's general credit and that the debt was not a "current income debt."

[3] Appellant also contends that it should be entitled to priority because the railroad company held the money received by it from passenger or shipper as a trust fund and the amounts thus collected to the extent of this indebtedness in equity belong to the bridge company, citing Terre Haute & Indianapolis Ry. Co. v. Cox, 102 Fed. 825, 42 C. C. A. 654. The facts in that case are distinguishable from those in the present case. In that case the court said:

"The 30 per centum embraced in the order of the court, though mingled with the funds of the Indianapolis Company, never belonged equitably to that company, either in its own right, or in the right of its bondholders. In equity the moneys were always, notwithstanding the intermingling, the moneys of the Peoria Company. In view of these facts, the court clearly had the power, after the appointment of the receivers, to recognize the provisions of the lease, to the extent of restoring these moneys; and, in our opinion, it was the duty of the court to go at least to that extent."

The agreement expressly provided for a division of the earnings. It is clearly distinguishable from a case covering an agreement calling for a payment as rent of a sum equal to a certain per cent. of the earnings.

In the present case, we conclude that the contract was one calling for the payment of rent and that the amount of the rent was measured in a somewhat unusual manner. The agreement did not, however, have the effect of giving to the bridge company a right to any specific money received by its lessee.

[4] In view of this determination of the first question submitted, it becomes unnecessary for us to consider the second question, for unless the appellant's claim was entitled to priority over the lien of the outstanding mortgages, no right to the net profits accrued in its favor, as against a mortgagee whose lien covered not only the property but the rents and profits derived therefrom.

The decree is affirmed.