JOHN A. ROEBLING'S SONS CO. OF CALIFORNIA et al. v. IDAHO RY., LIGHT & POWER CO. et al. *

(Circuit Court of Appeals, Ninth Circuit.   July 16, 1917.)

No. 2813.

1. APPEAL AND ERROR ☞907(1)—PRESUMPTIONS—FACTS NOT SHOWN BY RECORD.

On appeal from a decree denying claims for material sold a railway, light, and power company, shortly before the appointment of a receiver, priority over mortgage bondholders, where a part of one of the claims was for materials furnished for "service extensions," and there is no record evidence making it clear what the precise items were for, the District Court's finding that the materials were not an operating expense will be adopted.

2. RECEIVERS ☞158(2)—PRIORITY OF CLAIMS—CLAIMS FOR MATERIALS.

That parties selling materials to a railway, light, and power company, shortly before the appointment of a receiver, expected payment of their bills out of the company's current income, did not entitle them to preference over mortgage creditors, unless all parties agreed that their claims should be first paid out of current earnings.

3. STIPULATIONS ☞14(10)—CONSTRUCTION AND OPERATION—AGREED STATEMENT OF FACTS.

Where the enlargement and improvements of a power plant of a railway, light, and power company was to put the company in a condition to better serve its customers, and to supply the increasing demand for electric current, and machinery was furnished the company by a claimant for the purpose of generating increased power to be transmitted over new transmission lines, a stipulation, in an agreed statement of facts, that the machinery was necessary to the continued operation of the company's system, and that without it it could not perform its duties to the public, was not an agreement that the machinery, prior to its installation, was necessary to the continued operation of the system, or that the company could not, prior to such installation, perform its duties to the public.

4. RECEIVERS ☞158(3)—PRIORITIES—UNSECURED CLAIMS FOR MATERIALS.

Such machinery being for work of new construction, it was furnished in the enlargement, and not for the repair or maintenance, of the company's plant, as respected the claimant's right of priority over mortgage creditors.

5. RECEIVERS ☞158(2)—PRIORITY OF CLAIMS—CLAIMS FOR MATERIALS.

The diversion of a railway, light, and power company's income to the payment of interest on bonds of a subsidiary company did not entitle parties furnishing material to the principal company, shortly before its receivership, to priority over its mortgage bondholders, where the mortgage securing their bonds did not cover the property of the subsidiary company, and the payment of such interest did not inure to their benefit.

6. RECEIVERS ☞158(2)—PRIORITY OF CLAIMS—CLAIMS FOR MATERIALS.

The payment of interest by a corporation on its bonds, at a time when nothing was due on a claim for materials furnished it shortly before its receivership, was not a diversion of its earnings entitling such claim to priority over the mortgage bondholders.

7. RECEIVERS ☞158(3)—PRIORITY OF CLAIMS—CLAIMS FOR MATERIALS.

Materials furnished a corporation within six months before its receivership, for new construction and extraordinary improvements in its plant, were not payable as current operating expenses in preference to the claims of mortgage bondholders.

Gilbert, Circuit Judge, dissenting.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
* Rehearing denied October 8, 1917.

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit by the Westinghouse Electric & Manufacturing Company against the Idaho Railway, Light & Power Company and others, in which John A. Roebling's Sons Company of California and another intervened. From a decree denying their claims for preference, the interveners appeal. Affirmed. See, also, 228 Fed. 972.

Appeal from a decree of the District Court of Idaho denying certain claims for preference asserted by appellants, Roebling's Sons Company and I. P. Morris Company, for materials and supplies furnished to the appellee, Idaho Railway, Light & Power Company, before the appointment of a receiver for the corporation. The Westinghouse Electric Manufacturing Company, a general creditor of the Idaho Railway, Light & Power Company, to be called the Railway Company, brought suit on December 23, 1913, against the Railway Company, alleging that it owed large sums which it was unable to pay, and praying for the appointment of a receiver.

The Railway Company was in the general business of generating and distributing electricity and operating electric railway lines in many places in Idaho, the power and the traction properties operated by the Railway Company being under one control and management. After the Railway Company admitted the indebtedness sued upon and that a receiver was necessary, the court appointed as receiver O. G. F. Markhus, who had been general manager of the Railway Company. After the receiver was appointed, the Guarantee Trust Company of New York, as trustee, sued the Railway Company to foreclose a trust deed given by the Railway Company to secure payment of a bond issue of $30,000,000 of which approximately $9,000,000 were outstanding. The mortgage covered all the property of the Railway Company, including property that might thereafter be acquired by it, and all income and profits of all properties which were subject to the mortgage. In March, 1914, Roebling's Sons Company and I. P. Morris Company, respectively, intervened, and by cross-bill asserted priority of claims over the mortgage creditors. In due time foreclosure was decreed, and the property was sold under foreclosure to the Electric Investment Company for a sum sufficient to pay only $534.15 on each $1,000 bond outstanding under the mortgage. Thereafter the District Court denied the claims of preference of Roebling's Sons Company and Morris Company, and they have appealed.

From an agreed statement of facts it appears that between the 18th of March and the 30th of May, 1913, Roebling's Sons Company sold and delivered to the Railway Company, then a going concern, certain supplies and material for which the Railway Company agreed to pay; that it was to be a cash transaction, payment to be made by the Railway Company on bills as rendered within 30 days from the delivery of the various items; that before the receiver was appointed there was a payment of $17,519.80 on account, and that the balance due was $21,057.37 with interest; that the material and supplies were sold on open account under a belief on the part of the seller that the moneys to be due therefor should be paid out of current operating income; that, during the time when the supplies were furnished, the Railway Company was setting up reserves from its earnings and from the proceeds of sale of its bonds to pay bond interest; that the interest accruing on the bonds of the Railway Company on June 1, 1913, was $165,750; that the bond interest reserves in the six months preceding June 1, 1913, amounted to $135,750; that the Railway Company borrowed on the note of the company the balance required to meet the interest; that, in addition to the foregoing interest reserves, the Railway Company on April 1, 1913, paid from its earnings the interest on its underlying bonds of the Boise & Interurban Railway Company, amounting to $26,825, and on June 1st the interest on the bonds of the Boise Railroad Company, amounting to $9,725; that of the foregoing interest reserves about $79,000 was obtained from the earnings of the company during the period mentioned, and $56,750 from the proceeds of the sale of bonds; that when the supplies and material were furnished the Railway Company was constructing a transmission line about 30 miles long, from its central station in Swan Falls, Idaho, to a pumping plant of the Gem Irrigation District, with a four-mile branch

extension from a point on its line to the Guffey pumping station; that, before constructing this line, the Railway Company had generated power at its Swan Falls plant and had a transmission line running to certain mining districts in Owyhee county, Idaho, and another transmission line to places in Ada county, Idaho; that during the fall of 1912 and the winter of 1913 the Railway Company was enlarging the capacity of its Swan Falls plant by replacing generating units, and that one of its lines then under construction was to several irrigation districts with which contracts had been made; that when the Gem line was under construction the Railway Company owned a controlling interest in the stock and bonds of the Idaho-Oregon Light & Power Company, which stock and bonds were included in the trust security to the Guarantee Trust Company; that the Oregon Light & Power Company defaulted in paying interest on its bonds. April 1, 1913, and that the Railway Company had offered to the bondholders of the Idaho-Oregon Company a plan of reorganization under which the Idaho-Oregon Company should be maintained as a going concern; that the Idaho-Oregon Company had made various contracts for irrigation, involving the construction of extensions; that the material for such extensions was bought by the Railway Company and furnished to the Idaho-Oregon Company under an equipment trust agreement by which the Railway Company retained title to the supplies and material until the same should be paid for; that the material and supplies furnished by the Roebling's Sons Company was principally copper wire for extensions for the installation of new or replacement units, and that the wire and material delivered had been put to use by the Railway Company in its system, and contributed to the earnings and value of the properties and the security of the bonds, and that the material is and was necessary to the continued maintenance and operation of the respective parts of said property for which the same was supplied and in which it is used.

The claim of the I. P. Morris Company was for furnishing and installing certain power machinery for the electric plants of the company; the supplies having been received by the Railway Company prior to the first of June, 1913, but the installation was not completed or the work accepted until December, 1913, within six months of the appointment of the receiver. The Railway Company paid to the Morris Company $21,200.66, and gave two promissory notes for the balance due, one due in three months, the other in six months, from date. It appears from a stipulation of facts that between November 1, 1912, and December 23, 1913, the Railway Company paid from its earnings in interest on the bonds of the Boise & Interurban Railway Company, one of its constituent traction companies, on April 1, 1913, $26.825, and on October 1, 1913, $26,825; that it paid interest on the bonds of the Boise Railroad Company, Limited, another of its constituent companies, on December 1, 1912, $9,725, on June 1, 1913, $9,725, and on December 1, 1913, $9,725: that for the benefit of the sinking fund of the bonds issued by the Boise Railroad Company it paid on December 1, 1912, $5,000, and on December 1, 1913, $5,000; that on December 1, 1912, it paid, as interest on the bonds of the railway company, $146,075, and on June 1, 1913, $165,750, and in addition thereto has paid out large sums for permanent improvements and equipment, adding to the value of the property securing the bonds of the Railway Company issued under the trust deed to the Guarantee Trust Company; that the material and machinery furnished were necessary to the continued operation of the Railway Company's system, and that, without it, it could not perform its duties to the public, and that the Morris Company sold the material to the Railway Company in the belief and intention that, unless otherwise provided for, payment would be out of the operating or current income of the Railway Company.

Beverly L. Hodghead, of San Francisco, Cal., for appellants.

John F. MacLane, of Salt Lake City, Utah (Henry Root Stern, of New York City, of counsel), for appellees, Idaho Ry., Light & Power Co., O. G. F. Markhus, receiver, etc., Guarantee Trust Co., and Electric Inv. Co.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

243 F.—34

HUNT, Circuit Judge (after stating the facts as above). [1, 2] The appellant's principal contention is that there was a wrongful diversion of income, and that, in view of the extensive system of properties owned and operated by the Railway Company, the work done constituted merely ordinary service extensions and improvement and repairs, and was properly chargeable to maintenance and operation. As set forth in the statement of the case, the Roebling's Sons Company claim is in much the larger part for new wire for the transmission of electric power over newly constructed transmission lines, running from a central station to an irrigation transmission line and to a certain pumping station. When completed, these lines constituted substantial additions to the lines owned and operated by the Railway Company, or owned by the Idaho-Oregon Company, a separate corporation, the stock and bonds of which were principally owned by the Railway Company. The minor part of the claim, an item of $1,121.15, was for materials used "in connection with general service extensions of the Railway Company and its distributing systems" about and in the village of Eagle, Idaho. We are not advised just what "service extensions" included, and, in the absence of record evidence to make clear what the precise items were for, we will adopt the finding of the District Court, that under the facts shown it cannot be held to have been an operating expense. The stipulation of fact that the material furnished by the Roebling's Sons Company "is and was necessary to the continued maintenance and operation of the respective parts of said property for which the same was supplied and in which it is used" is to be construed with other portions of the stipulation, which show that the material went to making additions or enlargements of the system which had existed and for the maintenance and operation of such newly constructed lines adding to the system. This, however, takes us no further than to the point that, inasmuch as the supply was for new construction and use in connection therewith, it is not to be regarded as necessary for such repair or replacement as was required to keep the power plant and system a going concern as it had theretofore been conducted and kept up. The case is not altered by the stipulation that the Roebling's Sons Company sold the materials in the belief and intention on its part that the bills therefor should be paid out of current operating income. It is probably true in many instances that merchants who sell their products to public service corporations expect payment of their bills out of current income; but if there is an outstanding mortgage contract between the corporation and a mortgage creditor, such as there was here, preference will not be awarded over the mortgage creditors, unless it is proven that all parties agreed that the claim of the merchant shall be first paid out of current earnings of the buying company.

[3, 4] The claim of the Morris Company is for material furnished under a contract dated October 31, 1912, wherein the Morris Company was to design, construct, deliver, and install certain machinery necessary to enlarge and reconstruct what is called the Swan Falls plant of the Railway Company. The power part of the machinery was to be delivered in installments prior to April 1, 1913, and certain other materials were to be delivered within a year from the date of

the contract. The enlargement and improvement made at the Swan Falls plant was to put the Railway Company "in a condition to better serve its customers and to supply the increasing demand for electric current." The machinery to be furnished was for the purpose of generating the increased power to be transmitted over the new transmission lines heretofore referred to in connection with the claim of the Roebling Company. It also appears that the machinery included in the claim of the Morris Company would generate approximately 60 per cent. of the entire power of the Swan Falls plant, which is the only power plant owned and operated directly by the Railway Company. The stipulation of facts that the machinery is necessary to the continued operation of the Railway Company's system, and that, without it, it could not perform its duties to the public, is not an agreement that the machinery prior to its installation was necessary to the continued operation of the system, or that the Railway Company could not, prior to such installation, perform its duties to the public. The machinery being for work of new construction, we think that the conclusion of the District Court that the machinery furnished was for the enlargement, and not for the repair or the maintenance, of the Railway Company's plant, is the only correct one that could be reached with respect to this claim. It is to be specially noted, too, that the contract pertaining to this machinery was made 14 months before the appointment of the receiver; that the work was not finally completed until September, 1913, and was not finally accepted until December 9, 1913, upon which latter date $21,200.66 was paid, and two promissory notes, each for the sum of $13,246.58, were given. The comment of the District Court upon this phase of the claim was that it was "quite incredible" that the Morris Company, having knowledge of the plans of the Railway Company, could have expected that the entire expenses to arise under the contract would be taken care of from current receipts.

[5] In arguing for the claims above mentioned, appellants say that there was diversion of income by reason of the fact that the railway company paid on June 1, 1913, interest on the bonds held by the Guarantee Trust Company amounting to $165,750, interest on the bonds of the Boise & Interurban Railway Company amounting to $26,825, and interest on the bonds of the Boise Railroad Company amounting to $9,725, or a total of interest paid, $202,300. But of this amount, $56,750 came from the proceeds of the sale of the bonds of the Railway Company, and $30,000 was borrowed on the note of the company. If we deduct the amount of these two items from the total sum of $202,-300 paid out, we have a balance of $115,550. In this amount was $9,725 interest on the bonds of the Boise Railroad Company, but this amount did not inure to the benefit of the bondholders of the railway company, and in the decree made by the District Court it was specially provided that the Guarantee Trust Company, or bondholders represented by it, should not be held on account of the construction payments made on account of the Boise Railroad Company, as the properties of that company had been decreed not subject to the mortgage of the Guarantee Trust Company, and were ordered segregated from the receivership estate.

[6] With respect to the Morris claim, it is to be noted that the alleged diversion of June 1, 1913, was nearly seven months before the receiver was appointed. Or if, as counsel for Morris Company have urged in their brief, the material and labor involved in the claim were furnished within six months before the appointment of the receiver (December 23, 1913), then the claim did not accrue until after June 1, 1913, when the interest on the bonds was paid, and preference cannot be claimed, for clearly it is not a diversion of earnings for a corporation to pay interest due on its bonds when nothing is due at the time of the payment.

The legal principles and the more important authorities which bear upon the several views of the questions presented having recently been carefully considered and announced in Crane Co. v. Fidelity Trust Co. et al., 238 Fed. 693, —— C. C. A. ——, any extended discussion of the law would be but a repetition of what was there said.

[7] In accordance, therefore, with the rule of that case, we conclude that Roebling's Sons Company furnished material which went for new construction and extraordinary improvements in the plant of the Railway Company or the plant of the Idaho-Oregon Company, and the claim is not properly payable as a current operating expense in ordinary course of business, and that there was no diversion of any income earned after the accrual of the Roebling's Sons Company claim; that the Morris Company claim, being for generating machinery by way of new construction and extraordinary improvement to the mortgaged property, is not to be recognized as a current operating expense incurred in the ordinary business of the railway company, and that, the claim having accrued within six months prior to the appointment of the receiver, there was no diversion of income by payment of interest on June 1, 1913. It may be added, however, that, if we should assume that the materials involved in the Morris claim were furnished more than six months before the receiver was named, no special circumstances appear for departing from that period as the usual and reasonable limit.

The decree is affirmed.

GILBERT, Circuit Judge (dissenting). I dissent from the opinion of the majority of the court in this case, on the grounds stated in the dissenting opinion in Crane Co. v. Fidelity Trust Co., 238 Fed. 693, —— C. C. A. ——.